# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER PRATTS, | |
| Plaintiff, | NO. 3:16-CV-2385 |
| v. | (JUDGE CAPUTO) |
| STATE FARM FIRE & CASUALTY COMPANY, | |
| Defendant. | |

## **MEMORANDUM**

Presently before me is the Motion for Partial Summary Judgment (Doc. 62) filed by Defendant State Farm Fire & Casualty Company ("Defendant"). Plaintiff Jennifer Pratts ("Plaintiff") owned residential property in East Stroudsburg, Pennsylvania that was insured under a homeowners policy issued by Defendant. After a pipe burst at the property, Plaintiff submitted an insurance claim to Defendant. Dissatisfied with Defendant's response and handling of that claim, Plaintiff commenced this action asserting, *inter alia*, breach of contract and statutory bad faith causes of action. Defendant now seeks summary judgment on Plaintiff's breach of contract claim on the basis that Plaintiff failed to file litigation within the one (1) year limitation period provided for in the insurance agreement. Defendant also moves for summary judgment on Plaintiff's requests for consequential and compensatory damages. Because Plaintiff did not file suit until more than one (1) year after the loss occurred and Defendant did not waive the limitation provision, Plaintiff's breach of contract claim is barred by the policy's limitation provision. Moreover, Plaintiff cannot recover compensatory and consequential damages on her remaining bad faith claim because such damages are not provided for by statute and Plaintiff's demand for those damages as related to her bad faith claim was previously stricken from the Complaint. As such, Defendant's motion for partial summary judgment will be granted in part.

## I. Background

The facts are derived from Defendant's statement of facts, (*see* Doc. 62, "Def.'s SMF", ¶¶ 8-73), Plaintiff's opposition statement, (*see* Doc. 72, "Pl.'s CSF"), and the documents and testimony of record.[1]

Plaintiff was insured under a homeowners insurance policy issued by Defendant that became effective on January 14, 2015. (*See* Def.'s SMF, ¶¶ 9-10; Pl.'s CSF, ¶¶ 9-10). The property insured under that policy was located at 303 Players Court, East Stroudsburg, Pennsylvania with a mailing address of 128 Big Ridge Estates, East Stroudsburg, Pennsylvania (the "Property"). (*See* Def.'s SMF, ¶ 8; Pl.'s CSF, ¶ 8).

Plaintiff purchased the Property in December 2010 for $223,000.00. (*See* Pratts

---

[1] Local Rule 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issue for trial. *See id*. Moreover, "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements." *Id*. Here, on several instances, Plaintiff, without citing to any record evidence, denies Defendant's factual statements. (*See*, *e.g.*, Pl.'s CSF, ¶¶ 14, 17). These unsupported denials are not considered, *see*, *e.g.*, *Helvetia Swiss Ins. Co. v. Jones*, No. 16-1447, 2018 WL 4492814, at *2 n.2 (M.D. Pa. Sept. 19, 2018), and the facts cited in the corresponding paragraphs of Defendant's factual statement are adopted so long as they "are supported by sufficient citations to the record[.]" *N.J. Mfg. Ins. Co. v. Brady*, No. 15-2236, 2017 WL 264457, at *1 n.1 (M.D. Pa. Jan. 20, 2017); *see also Miezejewski v. Infinity Auto Ins. Co.*, No. 12-1000, 2014 WL 241966, at *2 n.4 (M.D. Pa. Jan. 22, 2014) ("Merely denying each fact without directing the court to the evidence relied upon in making that representation is not a proper response at this stage of the litigation. As required by Local Rule 56.1, the responding party is to demonstrate each fact where 'it is contested that there exists a genuine issue to be tried.' Without evidence to the contrary, a mere denial by itself does not establish a genuine issue for trial."). Further, insofar as Defendant's factual statement contains legal conclusions, those are not considered. *See*, *e.g.*, *Dyvex Indus., Inc. v. Agilex Flavors & Fragrances, Inc.*, No. 12-979, 2018 WL 1101028, at *2 n.4 (M.D. Pa. Feb. 28, 2018).

Dep., 26:17-20, 65:13-21). Plaintiff lived at the Property from that time until sometime in 2013, when she moved to New York and began renting the Property to a tenant. (*See id*. at 79:5-10, 80:15-20). After learning that her tenant was going to move out, Plaintiff contacted Richard Carroll ("Carroll"), a real estate agent, about listing the Property for sale. (*See id*. at 87:5-17). The Property was put on the market for sale on or about June 31, 2014. (*See* Carroll Dep., 110:16-111:12).

In October 2014, Plaintiff entered into a "Standard Agreement for the Sale of Real Estate" (the "Agreement") with the Ivonne Davilla Special Needs Trust (the "Trust"). (*See* Def.'s SMF, Ex. "L"; Pl.'s CSF, Ex. "K"). The Agreement was signed on behalf of the Trust on October 10, 2014, while Plaintiff's signature was electronically verified on October 15, 2014. (*See* Pl.'s CSF, Ex. "K", p. 13). The purchase price for the Property was $275,00.00 with an initial $2,000.00 deposit. (*See id*. at Ex. "K", ¶ 2). Among other terms, the Agreement provided that "th[e] offer is contingent on medicaid approval to be obtained within 90 days of contract ratification." (*See id*. at Ex. "K", ¶ 32). The Agreement further stated that the "Settlement Date," *i.e.*, December 15, 2014, (*see id*. at Ex. "K", ¶ 4), could only be "extended by mutual written agreement of the parties." (*Id*. at Ex. "K", ¶ 5). The Trust and Plaintiff subsequently agreed to extend the settlement date to January 8, 2015. (*See* Def.'s SMF, ¶ 30; Pl.'s CSF, ¶ 30).

Settlement on the Property did not take place on January 8, 2015 because Medicaid approval had not been received. (*See* Def.'s SMF, ¶ 31; Pl.'s CSF, ¶ 31). Carroll and the Trust's real estate agent, April Ace ("Ace"), corresponded via email regarding an extension to February 6, 2015 to close on the Property. (*See* Ace Dep., 56:12-21). Carroll also requested the Trust pay an additional, nonrefundable deposit of $8,000.00 for the extension, but that was not approved by the Trust. (*See id*. at 57:9-23, 58:11-23, 60:22-61:4). The addendum to the Agreement prepared by Ace extending the closing date to February 6, 2015 was never signed or returned by Adam Gates, an employee or representative for the Trust. (*See id*. at 63:18-64:3; *see also id*.

3

at 19:20-23).

On January 23, 2015, Mary Ann Dennis, an Operations Support Specialist for Pennsylvania American Water Company, received an email from Joseph Murphy requesting that a "leak letter[ ]" be issued for the Property because it was "leaking in the house and [is] off at the curb." (*See* Def.'s SMF, ¶ 13 & Ex. "H"; Pl.'s CSF, ¶ 13). Specifically, American Water found a leak at the Property and the Property vacant, so it shut off water service. (*See* Def.'s SMF, ¶ 14 & Ex. "I").

By letter dated January 27, 2015 that was sent to the Property, American Water advised Plaintiff as follows:

> VACANT HOUSE, FOUND LEAK, SHUT OFF WATER
>
> During a routine visit to your property we discovered that your house was vacant. At that time we sounded the service line and heard water running on your side of the pipe. This usually suggests a leak. PAWC was very concerned that this problem could cause a hazardous situation in your absence. Therefore, we shut off the water to the property located at 303 Players Ct LOT 303.
>
> You may notice an increase in consumption on your next bill. . . .

(Def.'s SMF, ¶ 15 and Ex. "J"; Pl.'s CSF, ¶ 15). Plaintiff, though, did not reside at the Property at that time and she testified that she first learned of the water damage at the Property on March 14, 2015. (*See* Pratts' Dep., 78:13-80:20, 141:149-16).

American Water sent a second letter to Plaintiff at the Property on February 14, 2015. (*See* Def.'s SMF, ¶ 16 & Ex. "K"). That letter provided:

> One of our responsibilities as your water service company is to give you all the information you need to manage your water use, and to alert you when we notice something out of the ordinary. While at your property to get a meter reading, we noticed that your water use was considerably higher than normal.
>
> There could be many reasons for unusually high water use and not all of them necessarily indicate a problem. We suggest that you check your property for possible problems which could cause unusually high water use. If you determine that the source of the high water use is the result of a broken service line or internal plumbing problem, we encourage you to take steps as soon as possible to prevent

4

> recurring high bills. . . .

(*Id*.). The water bill for the Property from December 9, 2014 to January 7, 2015 was $88.19 (0 gallons used), while the bill for the period from January 8, 2015 to February 9, 2015 was $1,479.78 (134,700 gallons used). (*See* Doc. 70, Ex. "BB").

Settlement on the Property did not occur by February 6, 2015, (*see* Ace Dep., 64:10-19), as Medicaid had not approved the purchase. (*See* Carroll Dep., 127:3-4). Carroll and Ace remained in contact regarding the Property thereafter, and on March 6, 2015, Ace indicated that she believed the deal was dead and that termination paperwork needed to be prepared. (*See* Ace Dep., 65:9-12). A termination and release, however, was never signed by Plaintiff and/or the Trust. (*See id*. at 73:24-74:2; Carroll Dep., 127:21-128:24). To date, a release has not been signed and the initial $2,000.00 deposit remains in escrow and has not been refunded to the Trust. (*See id*.).

Carroll relisted the Property for sale on March 6, 2015. (*See* Def.'s SMF, ¶ 37; Pl.'s CSF, ¶ 37).

On March 14, 2015, Carroll went to check on the Property, and he discovered that the water pipes burst and extensive damage had occurred to the Property. (*See id*. at 28:8-22). Carroll contacted Plaintiff at that time and advised her of the damage. (*See* Pratts Dep., 140:21-141:18).

The next day, Carroll and a low claims adjuster employed by Defendant met at the Property. (*See* Carroll Dep., 56:14-20). That adjuster advised that he handled claims of less than $10,000.00, and he estimated that the Property damage could be close to $100,000.00. (*See id*. at 56:14-20, 144:3-5).

Defendant's big claim adjuster did not come to the Property for two or three months. (*See id*. at 57:3-4). The big claims adjuster took measurements and photographs, surveyed the damage, and did price adjustments. (*See id*. at 63:4-64:4).

Following its investigation, Defendant determined that there was coverage for the loss, prepared a repair estimate totaling $110,244.83, and issued an actual cash

5

value payment to Plaintiff in the amount of $93,049.95. (*See* Def.'s SMF, ¶ 53; Pl.'s CSF, ¶ 53). On June 10, 2016, Plaintiff's public adjuster prepared a repair estimate totaling $155,785.06. (*See* Def.'s SMF, ¶ 54; Pl.'s CSF, ¶ 54). After evaluating the public adjuster's estimate, Defendant prepared an updated repair estimate totaling $132,876.77, and issued a supplemental payment to Plaintiff for $17,460.25. (*See* Def.'s SMF, ¶ 55; Pl.'s CSF, ¶ 55). Neither of the checks issued by Defendant have been cashed by Plaintiff. (*See* Pl.'s CSF, ¶ 56; *see also* Pratts Dep., 176:3-17).

Plaintiff ceased making mortgage payments on the Property in February 2015, and Bank of America ("BOA") ultimately commenced foreclosure proceedings and took possession of the Property. (*See* Def.'s SMF, ¶ 58; Pl.'s CSF, ¶ 58). BOA spent $5,493.00 on mold remediation before putting the Property up for sheriff's sale. (*See* Def.'s SMF, ¶ 60; Pl.'s CSF, ¶ 60). BOA did not do any work for water damage repair other than the mold remediation. (*See* Def.'s SMF, ¶ 62; Pl.'s CSF, ¶ 61).

Zhanna Ved ("Ved") purchased the Property at sheriff's sale for $115,350.04. (*See* Def.'s SMF, ¶ 63; Pl.'s CSF, ¶ 63). According to Ved, the damages were primarily to the basement. (*See* Def.'s SMF, ¶ 64; Pl.'s CSF, ¶ 64). Ved spent $31,769.44 to complete repairs to the Property before listing it for sale. (*See* Def.'s SMF, ¶ 66; Pl.'s CSF, ¶ 66). Gary L. Poplizio, P.E., opined that following the repairs made by Ved, the Property was in a "finished and restored condition." (Def.'s SMF, Ex. "V", 9). Ved sold the Property in October 2017 for $290,000.00. (*See* Def.'s SMF, ¶ 68; Pl.'s CSF, ¶ 68).

In connection with its foreclosure of the Property, BOA cancelled $100,828.09 in debt to which it was owed by Plaintiff. (*See* Def.'s SMF, ¶ 71; Pl.'s CSF, ¶ 71). As such, BOA issued a Form 1099 to Plaintiff. (*See* Def.'s SMF, ¶ 72; Pl.'s CSF, ¶ 72).

Based on the foregoing, Plaintiff commenced this action by filing a Praecipe for Writ of Summons in the Court of Common Pleas of Lackawanna County, Pennsylvania on March 14, 2016. (*See* Def.'s SMF, Ex. "A"). Plaintiff filed her Complaint in state court on November 4, 2016. (*See* Doc. 1, Ex. 1, *generally*). The

Complaint asserted claims for breach of contract (Count I), statutory bad faith (Count II), negligence (Count III), and vicarious liability (Count IV). (*See id*.). Defendant removed the action to this Court. (*See* Doc. 1, *generally*). Defendant then filed a motion to dismiss, (*see* Doc. 6, *generally*), which was granted in part and denied in part. (*See* Doc. 25, *generally*). Remaining in the case were Plaintiff's breach of contract and statutory bad faith claims.

Following the close of discovery, Defendant filed the instant motion for partial summary judgment. (*See* Doc. 62, *generally*). Specifically, Defendant seeks summary judgment on: (1) Plaintiff's breach of contract claim; (2) Plaintiff's claim for damages for the alleged lost sale of the Property; and (3) Plaintiff's claim for damages to the Property. (*See id*.). Plaintiff filed a brief in opposition to the motion, (*see* Doc. 69, *generally*), to which Defendant has replied. (*See* Doc. 70, *generally*). The motion for partial summary judgment is thus fully briefed and ripe for disposition.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute

is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

### III. Discussion

Defendant seeks summary judgment on Plaintiff's breach of contract claim, Plaintiff's claim for damages for the alleged lost sale of the Property, and Plaintiff's claim for damages to the Property. For the reasons that follow, Defendant's motion will be granted in part.

**A.    Breach of Contract.**

In Count I of the Complaint, Plaintiff alleges that Defendant breached the terms of the parties' insurance agreement by failing to honor her claim for property damage as presented. (*See* Doc. 1, Ex. 1, Count I). Defendant argues that it is entitled to summary judgment on this cause of action because Plaintiff failed to commence litigation within the parties' contractually-agreed upon one (1) year limitation period.

Under Pennsylvania law, contract actions are subject to a four (4) year statute of limitations. *See* 42 Pa. C.S.A. § 5525(a). The insurance contract at issue, however, provides for a shorter time to file suit. Specifically, the policy states: "**Suits Against Us**: No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or

8

damage." (Def.'s SMF, Ex. "F", 14 (emphasis in original)).

Such contractual provisions shortening the period for an insured to file a claim are permissible under Pennsylvania law. *See DiOrio v. Nationwide Mut. Ins. Co.*, 17 F.3d 657, 660 (3d Cir. 1994) ("'It is well-settled that a contractual provision limiting the time for commencement of suit on an insurance contract to a period shorter than that provided by an otherwise applicable statute of limitations is valid if reasonable.'"); *Lyons v. Nationwide Ins. Co.*, 567 A.2d 1100, 1102 (Pa. Super. Ct. 1989) (same). Courts have consistently found a one (1) year limitation reasonable. *See, e.g.*, *Gowton v. State Farm Fire & Cas. Co.*, No. 15-1164, 2016 WL 3539138, at *1 (W.D. Pa. June 29, 2016); *Yatsonsky v. State Farm Fire & Cas. Co.*, No. 15-1777, 2016 WL 1660863, at *2 (Apr. 27, 2016); *Condi v. State Farm Ins. Co.*, No. 13-1100, 2013 WL 4520852, at *4 (M.D. Pa. Aug. 26, 2013); *Palmisano v. State Farm Fire & Cas. Co.*, No. 12-886, 2012 WL 3595276, at *9-11 (W.D. Pa. Aug. 20, 2012); *Davidson v. Brethern Mut. Ins. Co.*, No. 05-1929, 2007 WL 2007991, at *3 (M.D. Pa. July 5, 2007); *Prime Medica Assocs. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1156 (Pa. Super Ct. 2009) (citing cases). Defendant's specific "Suit Against Us" clause has been found reasonable. *See, e.g.*, *Gowton*, 2016 WL 3539138, at *2; *Yatsonsky*, 2016 WL 1660863, at *2-3; *Condi*, 2013 WL 4520852, at *4; *Palmisano*, 2012 WL 3595276, at *10.

Plaintiff does not dispute that this provision in the policy is enforceable. (*See* Doc. 69, 14). Instead, Plaintiff argues that she commenced litigation within the one (1) year limitation period and/or Defendant waived the limitation provision. (*See id*. at 12-20). Neither is convincing.

Plaintiff commenced litigation against Defendant on March 14, 2016 by filing a Praecipe for Writ of Summons in the Lackawanna County Court of Common Pleas. (*See* Def.'s SMF, Ex. "A"). Plaintiff argues that this filing was within the limitation period because it was "exactly one (1) year after the date of loss," *i.e.*, March 14, 2015. (*See* Doc. 69, 20). According to Plaintiff, the date of loss was the day her realtor

discovered the water damage at the Property. (*See id*. at 17-20). This is so, says Plaintiff, because the policy is ambiguous as to whether the limitation period began to run "upon the date the damage or loss is discovered or when it occurred." (*Id*. at 18). Given the ambiguity in the policy, Plaintiff concludes that the date of loss is the day the damage was discovered. (*See id*. at 19).

Defendant disputes that the date of loss was March 14, 2015 or that the policy is ambiguous. Pointing to the American Water records, *i.e.*, the January 23, 2015 email indicating that water was leaking in the house and American Water's letters to Plaintiff, (*see* Def.'s SMF, Exs. "H"-"K"), along with Plaintiff's water bills reflecting the water usage at the Property, (*see* Doc. 70, "BB"), Defendant insists that the loss occurred, at the latest, on January 23, 2015. (*See* Doc. 63, 5; Doc. 70, 5). Thus, because the Praecipe for Writ of Summons was not filed until March 14, 2016, Defendant concludes that litigation was not commenced until nearly two (2) months after the applicable limitation period expired. (*See id*.).

Essentially, Plaintiff's claim is that the discovery rule should apply and that the limitation period did not begin to run until she became aware of the loss. But, as this Court explained in *Condi*, that position is not supported by Pennsylvania law:

> Plaintiffs have cited no cases for the proposition that the discovery rule should apply in an insurance action where the limitations period has been shortened by a contract provision. In fact, the Pennsylvania Supreme Court has rejected that proposition on at least two occasions. *See Lardas v. Underwriters Ins. Co.*, 426 Pa. 47, 231 A.2d 740 (Pa.1967) and *Gen. State Auth. v. Planet Ins. Co.*, 464 Pa. 162, 346 A.2d 265 (Pa.1975).
>
> *General State Authority* is illustrative of Pennsylvania law on this issue. In that case, the insureds purchased an insurance policy that covered a building. The policy contained a limitations period that required that suit be brought within twelve months from the inception of the loss. *Gen. State Auth.*, 346 A.2d at 267. The insureds' building burned down on January 2, 1969. The insureds did not learn of the destruction of the building, however, until more than two years later on May 10, 1971. *Id*. It argued that the limitations period should be computed from the date it first became aware of the loss. *Id*. at 268.

> The court disagreed. It reasoned that the policy's limitation period ran from the "inception of the loss" which has nothing to do with the state of mind of the insured. *Id*. The loss occurs whether or not the insured knows of it. *Id*. The date of the loss is an objective fact, and the limitations period is triggered by that date. *Id*.

*Condi*, 2013 WL 4520852, at *4-5 (Munley, J.); *see also Blackwell v. Allstate Ins. Co.*, No. 14-878, 2014 WL 4375592, at *3 (E.D. Pa. Sept. 3, 2014) ("Under Pennsylvania law, the discovery rule does not apply to contractual suit limitations periods.").

Here, the "date of loss" is an objective fact and does not refer to Plaintiff or whether she had knowledge of her claim. Thus, that Plaintiff initiated litigation exactly one (1) year to the date she discovered the water damage at the Property does not render her claim timely.

Moreover, the evidence of record confirms that the "date of loss" occurred before March 14, 2015. Among other evidence, the record indicates American Water became aware of water issues at the Property in January 2015, including a statement that the Property was leaking at that time. (*See* Def.'s SMF, Exs. "H"-"K"). Additionally, Defendant cites other evidence reflecting that the loss occurred in late January or early February 2015, namely, waters bills showing that 134,700 gallons of water were used at the Property from January 8, 2015 to February 9, 2015, but zero (0) gallons were used during the prior billing cycle. (*See* Doc. 70, Ex. "BB"). However, there is also evidence in the record that the Property was visited at an unspecified date in February 2015 and no water damage was noted. Specifically, Carroll testified that he knew Ace was at the Property in February 2015 because she had to call him to access the house, and she told him in a different conversation that took place after Carroll discovered the damage that the Property was fine when she was last there in February 2015. (*See* Carroll Dep., 20:25-21:18, 25:6-14, 26:21-27:14). While Ace testified that she could not recall whether she was last in the Property in January or February 2015, she believed it was in January of that year. (*See* Ace Dep., 20:23-31:4, 51:6-10). Thus, although it is not clear the exact date the leak occurred, by March 14,

2015 the house had "wet ceilings falling in, mold and everything" and that "pipes froze and the walls [were] down, the basement [was] damaged. Everything [was] damaged." (Carroll Dep., 28:8-10, 141:7-13). The record evidence makes clear that the pipes burst before March 14, 2015 when the damage was discovered, so Plaintiff's filing of the Praecipe for Writ of Summons on March 14, 2016 was more than one (1) year after the date of loss. Thus, absent a defense to the limitation period, Defendant is entitled to summary judgment on the breach of contract claim.

On this point, Plaintiff raises a waiver defense. (*See* Doc. 70, 14-17). Specifically, Plaintiff contends that the limitation period was waived because: (1) Defendant took her statement under oath and provided payment after the alleged limitation period expired; and (2) Defendant repeatedly identified - both before and after the expiration of the limitation period - the applicable date of loss as March 14, 2015.

The Pennsylvania Supreme Court has held that a suit limitation period "may be extended or waived where the actions of the insurer lead the insured to believe the contractual limitations period will not be enforced." *Gen. State Auth.*, 346 A.2d at 267 n.6. Waiver is "a voluntary and intentional abandonment or relinquishment of a known right that may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Yatsonsky*, 2016 WL 1660863, at *3 (quoting *Samuel J. Marranca Gen. Contracting Co., Inc. v. Amerimar Cherry Hill Assocs. Ltd. P'ship*, 610 A.2d 499, 501 (Pa. Super. Ct. 1992)). "The insured must present evidence establishing reasonable grounds for believing that the time limit would be extended or that the insurer would not strictly enforce the suit limitation provision." *Prime Medica*, 970 A.2d at 1157 (citation and quotation omitted).

Plaintiff does not point to any action by Defendant that it would not enforce the

limitation provision, so her waiver defense fails.[2] For one, Defendant's conduct that occurred after the expiration of the period established by the limitation provision cannot be said to have waived that clause. *See*, *e.g.*, *Yatsonsky*, 2016 WL 1660863, at *4 (claims note created after the limitations period expired did not waive limitations provision); *see also Williams v. Allstate Vehicle & Prop. Ins. Co.*, No. 18-675, 2018 WL 4100681, at *7 (E.D. Pa. Aug. 27, 2018) ("Defendant's act of making a payment on the appraisal award in this case after the suit limitation period is not evidence of waiver . . . ."); *Reinhart v. Erie Ins. Co.*, No. 2034 MDA 2014, 2015 WL 6159391, at *8 (Pa. Super. Ct. Apr. 30, 2015) ("Clearly, the actions of Erie taken after the limitations period had expired could not have caused Plaintiffs to miss the limitations period.").

Nor has Plaintiff shown that Defendant waived the limitation provision when Defendant identified the "date of loss" as March 14, 2015 in several correspondences to Plaintiff prior to expiration of the limitation period. (*See* Doc. 70, Exs. "CC"-"DD"). In nearly all of those letters to Plaintiff, Defendant quoted the limitation provision of the policy to "ensure that you are aware of that provision of your policy." (*See id.*). And, in a letter to Plaintiff advising her that it had been unable to complete

---

[2] Equitable estoppel is also a recognized defense to a suit limitation provision under Pennsylvania law. *See Yatsonsky*, 2016 WL 1660863, at *3; *Prime Medica*, 970 A.2d at 1157. Plaintiff does not raise that defense in the matter *sub judice*. (*See* Doc. 69, *generally*). Nor does she argue that she justifiably relied on any inducements by Defendant. *See Yatsonsky*, 2016 WL 1660863, at *3 ("Estoppel requires the presence of two elements: (1) inducement to act; and (2) justifiable reliance on that inducement."). Thus, I do not consider that defense here. Instead, Plaintiff cites the "reasonable expectations" doctrine, arguing that she "should reasonably assume to have insurance coverage" because she initiated the action within one (1) year of the date of loss Defendant identified on communications with her. (*See* Doc. 69, 18-20). That doctrine pertains to determining issues of insurance coverage, *see Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005), and Plaintiff does not cite any case law applying the "reasonable expectations" doctrine when considering whether the insured filed suit within a contractual limitation period. (*See* Doc. 69, 18-20).

its investigation due to her lack of cooperation, Defendant noted that the letter was "not to be construed as a waiver of any of the conditions specified in the policy." (Doc. 69, Ex. "P").

More importantly, though, Defendant made clear to Plaintiff from the outset of her claim for water damage under the policy that there were questions as to the date the loss occurred. (*See* Doc. 70, Ex. "DD", SF 0528). Specifically, by letter to Plaintiff dated March 20, 2015, Defendant identified the "date of loss" as March 14, 2015 based on Plaintiff's claim "which is *alleged* to have occurred on or about March 14, 2015 . . . ." (*Id*.) (emphasis added). Defendant explained that "there are questions as to whether [it] is obligated to indemnify you under the policy" because, *inter alia*, "*[i]t is questionable when the loss occurred*." (*Id*.) (emphasis added). Defendant further advised that by its letter it did "not intend . . . to waive any policy defenses . . . ." (*Id*. at 0531). Plaintiff was also advised by letter dated May 6, 2015 regarding the "loss[ ] which is alleged to have occurred on or about March 14, 2015" that "[i]t was questionable when the loss occurred." (Doc. 70, Ex. "DD", SF 0516). Again, Plaintiff was told that Defendant did not intend to waive any policy defenses, and it directed Plaintiff to the policy's limitation provision. (*See id*. at SF 0519). Plaintiff was sent a similar correspondence on October 28, 2015 regarding the loss "alleged to have occurred on or about March 14, 2015", wherein Defendant noted it was unsure whether it was obligated under the policy based on, among other things, a question as to "when the loss occurred." (*Id*. at SF 0499).

Accordingly, the applicable policy of insurance provided a one (1) year limitation period to commence suit from the date of loss or injury, not from the date the loss or injury was discovered. In the matter *sub judice*, while Plaintiff commenced this action exactly one (1) year to the day that the property damage was discovered, the date of loss was more than one (1) year before litigation was filed. As a result, Plaintiff filed this action after the limitation period expired. Furthermore, Plaintiff's defense to the limitation period, *i.e.*, waiver, does not find support in the record.

14

Defendant will therefore be granted summary judgment on the breach of contract claim.

**B.     Lost Sale and Property Damages.**

Defendant next seeks summary judgment on Plaintiff's damages claims for the lost sale of the Property and damages to the Property. With respect to the lost sale damages, Plaintiff asserts that she had an agreement to sell the Property to the Trust, but after the loss was discovered and Defendant refused to make a timely payment on the claim, the Property could not be sold. (*See* Doc. 69, 20-26). Defendant argues that Plaintiff cannot recover consequential damages for the lost sale of the Property because the Agreement to sell the Property to the Trust expired prior to the loss and the lost sale was not reasonably foreseeable. (*See* Doc. 63, 6-11). Plaintiff disputes that she cannot recover such consequential damages on the grounds that the Agreement of sale was valid at the time of loss and the loss was reasonably foreseeable. (*See* Doc. 69, 20-26). As to the property damage claim, Plaintiff alleges that she is entitled to compensatory damages based on Defendant's failure to honor her property damage claim as presented. (*See* Doc. 1, Ex. "1", ¶ 72). Defendant contends that the payment it made to Plaintiff, along with the final benefits Plaintiff received from BOA, were well in excess of the amount it actually cost to repair the Property. (*See* Doc. 63, 11-14). Plaintiff responds that she never accepted the payment by Defendant, and further notes that her public adjuster concluded that the cost to repair the Property was in excess of the amount determined by Defendant. (*See* Doc. 69, 26-28).

Plaintiff's request for these damages pertaining to her sole remaining claim in this litigation have already been stricken from the Complaint. More particularly, in Defendant's motion to dismiss and/or strike, it sought, *inter alia*, to have Plaintiff's

request for "compensatory and/or consequential damages"[3] on her bad faith claim in Paragraph 81 of the Complaint stricken. (*See* Doc. 7, 14-15). I granted that aspect of the motion because compensatory and/or consequential damages are not provided for by Pennsylvania's bad faith statute. (*See* Doc. 24, 10); *see also Wolfe v. Allstate Prop. Ins. Co.*, 790 F.3d 487, 498 (3d Cir. 2015) ("Section 8371 does not provide for the award of compensatory damages, which, if sought, must be recovered based on other theories."); *Tippett v. Ameriprise Ins. Co.*, No. 14-4710, 2015 WL 1345442, at *7 (E.D. Pa. Mar. 25, 2015) ("the Bad Faith Statute does not permit recovery of compensatory or consequential damages"); *Birth Ctr.*, 787 A.2d at 386 (insured "may not recover compensatory damages based on Section 8371"). But, while Plaintiff cannot recover compensatory and/or consequential damages on this claim, she does not need a viable claim for such damages to recover on a "statutory bad faith claim, which only permits recovery of punitive damages, interest, and costs." *Wolfe*, 790 F.3d at 499; *see also id.* ("Section 8371 sets forth no requirement to be entitled to damages for the insurer's bad faith," and "[t]he policy behind section 8371 - deterring insurance companies from engaging in bad faith practices - is furthered by allowing a statutory bad faith claim to proceed even where the insured has alleged no compensatory damages resulting from that conduct.").[4]

---

[3] "Compensatory damages are damages meant to place the injured party in the place he was prior to the injury. Compensatory damages consist of both 'general' and 'consequential' or 'special' damages. While general damages compensate the injured party for the immediate injury or loss sustained, consequential damages are damages that flow from the consequences of the direct injury." *Birth Ctr. v. St. Paul Companies, Inc.*, 787 A.2d 376, 408 n.1 (Pa. 2001) (Nigro, J., concurring) (internal citations omitted).

[4] Because Plaintiff's request for compensatory and consequential damages on the bad faith claim was already stricken from the Complaint, (*see* Doc. 25, ¶ 2), I need not grant this aspect of Defendant's motion for partial summary judgment.

### IV. Conclusion

For the above stated reasons, Defendant's motion for partial summary judgment will be granted as to the breach of contract claim. The action will proceed to trial on Plaintiff's remaining bad faith claim pursuant to 42 Pa. C.S.A. § 8371.

An appropriate order follows.

May 2, 2019  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge